**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN DOE 1, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-4069** |

## MEMORANDUM OPINION AND ORDER

Born in Iran, Plaintiff John Doe 1 lives in Virginia and has been a naturalized citizen of the United States since 1994. See ECF No. 1 (Compl.), ¶ 18. In 2022 and 2023, he regularly participated in "Woman, Life, Freedom" demonstrations in D.C. Id., ¶ 3. Agents of Iran allegedly documented his participation and then arrested him when he visited his parents in Tehran in November 2023. Id., ¶ 4. They went on to torture him, threaten his children's safety in the United States, and force a confession; Iran then prosecuted him for his protest activity and sentenced him to nine years and eight months in prison. Id., ¶ 5. He ultimately spent 681 days in custody, during which time he underwent three surgeries in response to a cardiac emergency. Id. Plaintiff Jane Doe 1, a naturalized U.S. citizen since 2000, is his wife. Id., ¶ 19. Plaintiffs Jane Doe 2 and John Doe 2, both U.S. citizens, are their children. Id., ¶¶ 20–21.

Plaintiffs sued Iran for damages under the Foreign Sovereign Immunities Act, id., ¶ 7, and now move to proceed pseudonymously. See generally ECF No. 2 (Mot.). The Court will grant their Motion.

## I. Legal Standard

Generally, a complaint must identify the plaintiffs. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). That requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure" by applying a "flexible and fact driven" balancing test. Id. (quoting In re Sealed Case, 931 F.3d at 96). That test assesses "five non-exhaustive factors":

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or, even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and relatedly;
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (cleaned up).

## II. Analysis

Plaintiffs have shown that their interest in pseudonymity outweighs the public's interest in learning their identities.

First, as the Complaint makes clear, Plaintiffs do not seek to proceed under pseudonyms "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original). Relevant here, privacy can include "maintaining [Plaintiffs'] and their family members' safety." Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023); see also R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op. & Order) at 3 (D.D.C. Sep. 12, 2023) (determining that history of "severe violence and threats . . . at the hands of proxy militia organizations" shows that "Plaintiffs seek to avoid much graver harms than mere annoyance and criticism").

Plaintiffs' aforementioned allegations of violence and threats — including torture and detention in Iran and threats on the children's lives in the United States, see Compl., ¶¶ 5, 36–40, 87; Mot. at 2–3, 5 — are more than sufficient to tip this first factor in their favor. In particular, their pleadings demonstrate that they have an interest in concealing their identities from "regime-aligned individuals and proxies, inside and outside Iran, who act against the regime's critics on their own initiative." Mot. at 7; see Farshid Do v. Islamic Revolutionary Guard Corps, 2026 WL 980758, at *2 (D.D.C. Apr. 13, 2026). In addition, as Plaintiffs note, the sensitive nature of the information about John Doe 1's experience in custody, including "torture," "suicidal despair" and "serious medical crises," Mot. at 5; see Compl., ¶¶ 82–83 (detailing physical injuries and "severe mental anguish and emotional distress, including terror during a mock execution"), lends their request additional support under this factor. See J.K.A. v. United States, 2023 WL

12248425, at *2 (D.D.C. Aug. 10, 2023) (finding factor favored pseudonymity where complaint "describes in vivid detail how . . . Plaintiff was physically abused while in ICE custody in the United States and then after arriving in Cameroon, including highly personal physical and medical responses to that treatment").

The second factor — the risk of retaliatory harm — is closely related to the first and likewise weighs in favor of pseudonymity. Plaintiffs allege that the conduct described above was carried out to silence John Doe 1 and punish him for his participation in demonstrations. See Compl., ¶¶ 2–5. They emphasize the risk to family members who still live in Iran, including Jane Doe 1's parents and John Doe 1's brother and sister. See Mot. at 5. According to Plaintiffs, such relatives "are precisely the people the Iranian security services can summon, interrogate, [and] detain." Id. at 5–6. Disclosure of Plaintiffs' identities — "and through their names their relatives" — would make their connection to this case "readily known" to Iran and "expose" them to the retaliatory whims of proxies. Id. at 7. The "risk of retaliatory . . . harm to" Plaintiffs and "to innocent non-parties" thus supports letting Plaintiffs proceed pseudonymously. In re Sealed Case, 971 F.3d at 326 (quotation marks omitted); see Doe v. Islamic Republic of Iran, 2026 WL 2969737, at *2 (D.D.C. Oct. 2, 2026) (finding factor favored pseudonymity where plaintiffs alleged disclosure would increase their visibility and raise risk of future harm to whole family).

As to the third factor, concerning the privacy interests of minors, Plaintiffs concede that it "does not weigh in their favor on its own terms" because they are adults. See Mot. at 7. Regardless of whether it is "inapplicable" or actually weighs "in favor of disclosure," the third factor thus renders their request for pseudonymity "less compelling." Doe v. Pub. Co. Acct. Oversight Bd., 2026 WL 1661910, at *2 (D.C. Cir. 2026) (citation omitted).

Factor four, the identity of the defendants, favors pseudonymity when a plaintiff sues a government for individualized relief. Doe v. Rubio, 2025 WL 3522731, at *2 (D.D.C. Dec. 9, 2025). This suit fits the bill. Plaintiffs are suing the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps, as well as the state-owned National Iranian Oil Company. See Compl., ¶¶ 22–26. Furthermore, they seek compensatory, economic, solatium, and punitive damages, id. at 19 (prayer for relief), which are forms of individualized relief.

Fifth and finally, letting Plaintiffs proceed pseudonymously will not prejudice Defendants. Plaintiffs plan to file their true names and residential addresses under seal, and they state that they "will disclose their identities to any Defendant that appears, subject to an appropriate protective order." Mot. at 8; see J.K.A., 2023 WL 12248425, at *3 (noting that when plaintiff offers to file identifying information under seal, this factor supports pseudonymity). To the extent that Defendants already know their identities, such knowledge does not undercut Plaintiffs' request for pseudonymity under this factor. See Doe v. Fed. Republic of Germany, 680 F. Supp. 3d 1, 6 (D.D.C. 2023) ("Defendants would suffer no risk of unfairness if the Motion were granted, given Plaintiff's claim that they already know Plaintiff's true identity.") (cleaned up). Defendants thus do not face a risk of unfairness. As Plaintiffs acknowledge, see Mot. at 8, Defendants remain free to request any further information that they deem necessary to the full defense of this case or to ask the Court to reconsider this decision.

The Court highlights that this is an initial decision to permit Plaintiffs to proceed pseudonymously. If Defendants appear to defend this suit, the balance of factors might tip the other way. See Doe I v. Sabeti, 2025 WL 4348642, at *1 (M.D. Fla. Aug. 12, 2025) (reconsidering initial grant to proceed pseudonymously in Torture Victim Protection Act case upon defendant appearance). In any event, Plaintiffs have made an initial showing that their

concerns extend beyond Defendants' learning their identities to the risk that third parties could obtain this information and act on Defendants' behalf to harm them. See Mot. at 7 (citing Farshid Do, 2026 WL 980758, at *2).

In sum, four of the five factors weigh in favor of allowing Plaintiffs to proceed under pseudonyms and, accordingly, to omit their residential addresses as well as their true names from the public caption, too — a request that Plaintiffs lodge separately in their Motion. See Mot. at 8; cf. LCvR 5.1(c)(1) (noting that parties may file residential addresses under seal regardless of pseudonymity). The Court will thus grant Plaintiffs' Motion, subject to reconsideration by the District Judge to whom this case is randomly assigned.

The Court accordingly ORDERS that:

1. Plaintiffs' [2] Motion for Leave to Proceed Under Pseudonyms is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;
2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and
3. Within fourteen days of this Order, Plaintiffs shall file:
   i. A pseudonymous version of their [2] Motion on the public docket; and
   ii. A sealed *ex parte* declaration containing their real names and residential addresses.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: November 18, 2026